## DEACON v. SHREVE.

1. If jurors, pending a trial, go with the witnesses of one of the parties to the place in dispute, without the knowledge of the other party, for the purpose of having the premises shown, or the evidence explained by these witnesses *ex parte*, it is such misconduct in the jurors as will set aside the verdict.

2. The affidavits of jurors, or evidence of their admissions, are not competent testimony to prove their own misconduct; but it may be proved by the oath of a fellow juror, who is not inculpated in such misconduct.

On rule to show cause why verdict should not be set aside.

This was an action for overflowing land, and obstructing the operation of a mill, by raising the water of a pond below, on the same stream, beyond the proper level. The plaintiff recovered a verdict, and the defendants obtained a rule to show cause why that verdict should not be set aside, on the ground of misconduct on the part of the jurors, alleged to have been at the instance of the plaintiff. Depositions were taken to sustain the reasons assigned. A juror, whose deposition was taken, testified that a notice, styled "Exhibit A," of which the following is a copy, was left at his house :

RANCOCAS, 9mo. 13th, 1845.

Friend William Garwood.—I was requested to inform thee that James Gardner and Benajah Powell wants thee for to come and see that spring that was talked about in court before the jury of review. They say that it was misrepresented to you, and they want thee to come to Benajah's on second day next, at eight o'clock in the morning.

By the request of the above.

JOHN BORTON, JUN.

It is expected that the jury will be there.

Gardner and Powell were two of the plaintiff's witnesses, who had been examined before the adjournment, and Borton was a friend of the plaintiff, and was shortly after married to his sister. Gardner did not go to Powell's, but three of the jurors did go, and were there met by a brother of the plaintiff and one Montgomery, a friend and witness of the plaintiff; and, in company with these, the three jurors examined the spring alluded to. This took place during an adjournment of the court pending the trial, which was a protracted one.

The defendant offered depositions to show, by the admissions of these three jurors, that they had attended at the spring, and were to be paid for their attendance.

Argued before NEVIUS, CARPENTER, and OGDEN, Justices.

*W. Halsted* and *G. D. Wall,* for defendants.

We allege misconduct on the part of some of the jurors, at the instance of the plaintiff. A private examination of a spring, &c., having an important bearing on the matter in controversy, was made by three jurors, in the presence of the friends and agents of the plaintiff, in the absence and without the knowledge of the defendants. The note of invitation, upon which these jurors attended, was written by a friend of the plaintiff, and who, in two weeks afterwards, became related by marriage, and on the day the brother of the plaintiff was present, and aided those jurors in their examination. Those jurors received pay from the plaintiff for their services on that day, as is proved by their own admissions. The declarations of the

jurors, made while still charged with their duty, are admissible, for they cannot be examined to criminate themselves. 1 *Phil. Ev.* 94 (*Conn. ed.*); 2 *Ib.* 176, *note* 179; *Coxe* 123; *Ib.* 166; 4 *Harr.* 77; 3 *Ib.* 450.

*Browning* (attorney general) and *Dayton,* contra.

During the adjournment, three of the jurors made a visit to the Powell spring, in the absence of the defendants. If of their own motion, it could be no reason to set aside the verdict : to lay any ground, it must be shown to have been at the instance of the plaintiff. It is not shown to have been at his instance. They were invited by Powell and Gardner, two witnesses examined in the cause. The juror to whom the note was addressed did not attend, and it is only an inference, that similar notes were sent to others. We object to proof of declarations by jurors to break down their verdict. Declarations after the trial, or except when made in the room, are not admissible, and then only because the jurors themselves cannot be called. Strike out their declarations, and nothing remains but the fact of the simple visit to the spring. If any thing improper passed between others and the jurors, we deny that it was with plaintiff's knowledge. *Graham on New Trials* 110, 126, 128, &c.; *Coxe* 32, *note ;* 2 *Chit. Rep.* 268.

NEVIUS, J.   This is an action for overflowing lands, and was tried at the Burlington circuit, in the term of August, 1845, and a verdict rendered in favor of the plaintiff for $500, which the defendants seek to have set aside for misconduct of the plaintiff and some of the jurors during the trial.   It appears by the depositions, taken under a rule of this court, that after the trial had commenced, and some days spent in the examination of witnesses, the cause was adjourned over until the 24th of September following.   It appears, also, that before the adjournment took place, a witness or witnesses had been examined touching a certain spring on the lands of one Benjamin Powell, the position and condition of which became a material point in the evidence.   After the adjournment, and on the 13th of September, one of the jurors received the following note, *viz :*

"RANCOCAS, 9 mo. 13th, 1845.

Friend William Garwood,—I was requested to inform thee that James Gardner and Benajah Powell wants thee for to come and see that spring that was talked about in court before the jury of review. They say that it was misrepresented to you, and they want thee to come to Benajah's on second day next, at eight o'clock in the morning. By the request of the above.

JOHN BORTON, JUN.

It is expected that the jury will all be there."

Borton, in whose handwriting the foregoing note was proved to be, shortly after the date thereof, became connected with the plaintiff, by the marriage of his sister-in-law. Garwood did not attend pursuant to the notice, but three others of the jurors did visit the spring, either on the morning designated in said note, or some other morning during the recess of the court, and there spent from an hour and a half to two hours in company with one Benjamin Montgomery, and Benjamin Deacon, a brother of the plaintiff. Neither of the defendants nor their counsel were present, nor does it appear they had any notice of such meeting. Whether this visit to the spring took place by the procurement of the plaintiff or not, is not very material to determine, though it is difficult to avoid the inference, that it was with his knowledge and approbation. It is sufficient, if we find that the jurors themselves were guilty of misconduct, to warrant the court in setting aside the verdict. It is not denied but that the situation of the spring had become a material point in the cause; several witnesses had been examined concerning it, among whom was Benajah Powell. This meeting, therefore, at the spring was manifestly with the view of obtaining information, or to confirm or contradict what the witnesses had sworn to. What information these jurors did obtain on that visit does not appear, nor does it appear how it affected their verdict; but whatever it was, the defendants had a right to know, that they might, by their examination, explain or contradict it. All evidence in a case should be openly and publicly given in presence of both parties. Jurors cannot give

a verdict founded on their own private knowledge, for it would not be known whether such verdict was according to or against evidence; and it is possible that the private grounds of belief might not amount to legal evidence. And if such private knowledge be communicated by one juror to the rest, it would be without the sanction of an oath or opportunity of cross-examination, and will be ground for a new trial. *Stark.* 449. Where in an action on the case for obstructing lights, the trial of which commenced on Saturday and ended on Monday, some of the jurors went to the premises on Sunday, and in the presence of the plaintiff examined the lights and the alleged obstruction, a verdict found for the plaintiff was set aside. *Tyrrell* v. *Bristow,* 1 *Alcock and Napier* 398; 7 *E. C. L. R.* 433.

I will not dwell upon that part of the evidence contained in the affidavits before us, which tends to the belief that the plaintiff procured this meeting of the jurors at the spring, and paid them for their attendance, though there is strong evidence of such misconduct. I will rest the case upon the single fact, that three of the jurors, in company with a nigh relative of the plaintiff, visited that spring during the recess of the court, without the knowledge of the defendants. I consider it misconduct on the part of these jurors calculated to prejudice the rights of the defendants, and for this reason am of opinion that the verdict ought to be set aside, without costs.

CARPENTER, J.   The defendants move to set aside the verdict in this case for misconduct charged against some of the jurors who tried the case, and which, it is alleged, took place at the instance or by the connivance of the plaintiff. The parties are the owners of mills on the same stream, and the defendants, who own the lower mill, were charged with having raised the water in their pond beyond its proper and accustomed level, so as to impede the operation of the plaintiff's mill above. The trial of the cause was commenced at the term of the Burlington circuit, but was unavoidably adjourned, in consequence of a providential occurrence, for several weeks, when it was resumed and concluded. A spring of wa-

Deacon v. Shreve.

ter, called the Powell spring, became, it is said, an important subject of inquiry on the trial, from its relation to the water in the lower pond.

During this adjournment, a note, dated September 13, 1845, which was Sunday, was addressed to William Garwood, a juror, requesting him to attend the next day, at a designated place, to view that spring. The note was written, or signed, by one William Borton, a person who shortly after (within a fortnight) married the sister of the plaintiff's wife. It purported to have been written at the request of Gardner and Powell, two witnesses, who testified at the trial, on the part of the plaintiff, in regard to that spring. It stated that they wished the juror to come and view the spring; that misrepresentations had been made to the jurors in regard to it; requested him to come to the house of Powell, the witness, and further stated, that it was expected the jury would be there.

The juror to whom this note was addressed did not attend at the place thus designated, but three others of the jurors did attend, leaving room for the inference, that some similar invitation had been made to them, if not to all the jurors. At the day mentioned, the three jurors came to the house of Benajah Powell. They were there met by Benjamin Deacon and one Montgomery, the former a brother, the latter a witness and a friend, if not an agent, of the plaintiff. The jurors and these two persons then proceeded to view the spring, Montgomery going along expressly for the purpose of showing it. Borton, who wrote the note, does not appear to have been present. Powell and Gardner, at whose request the invitation purported to be given, were with the jurors at the house of Powell, but did not accompany them to the spring. A piece of timber called, because of its position, a cap, seems to have been a subject of testimony on the trial, and to have been considered as a mark by which the relative height of the water in the lower pond might be ascertained. Some of the jurors said they would like to see this cap, and it was shown to them by the same person. During the time which the jurors were so engaged, they conversed in relation to these matters, in which

Deacon v. Shreve.

conversation Deacon, if not Montgomery, who were both present, participated.

The trial was resumed on the 24th of September, after the long adjournment referred to. Depositions have been taken, in order to prove conversations by the same three jurors, in which they admitted that they had attended at the spring. Their attendance at that place, under the circumstances already shortly narrated, was proved by direct testimony, and evidence of their declaration to that effect is quite immaterial. But the proof, as to their declarations, is attempted to be carried much farther. A fellow juror testified, that after the cause had been recommenced, and during its progress, he heard one of these three jurors tell the two others that he had got his dollar from the plaintiff for his attendance at the spring ; that the other two then said they meant to have their pay too, one of whom subsequently said he, also, had got his pay for the same service. From the intelligence and respectability of the jurors upon whom such conduct is charged, I cannot but think, as well as hope, that the whole conversation was of a jocular character, and that it must have been misunderstood. It is remarkable that the great impropriety of their visiting and examining the premises in company with the friends and witnesses of the plaintiff, did not strike the minds of these jurors, but it is almost beyond belief that they could have received pay for such service. But the whole testimony, as to their declarations, is objected to as incompetent, and its admissibility seems to be very questionable.

The principle is now well settled, that generally the affidavits of jurors shall not be received as to what took place in the jury room, or elsewhere, to show misbehavior, or on the delivery of the verdict to show mistake, for the purpose of correcting or destroying the verdict, though it seems their affidavits are admissible for the purpose of exculpation. The rule stands on the ground of public policy, courts being unwilling to permit a dissatisfied juror by such means to destroy a verdict to which he had given a public assent. So what a juror cannot do by his own statement under oath, he cannot do by his admission or confessions when not under oath. In a case

in England, an affidavit, that one of the jurors had admitted to the deponent that the verdict had been decided by lot, was peremptorily rejected. It was said, that to set aside verdicts on such statements would be dangerous, and likely to lead to the greatest fraud and abuse. *Straker* v. *Graham*, 4 *M. & W.* 721; *Hindle* v. *Birch*, 8 *Taunt.* 26; *Burgess* v. *Langley*, 5 *M. & G.* 722.

It is requisite to prove such misconduct by the affidavit of the officer who had charge of the jury, or in some other way than by the declaration or oath of a juror, unless, indeed, the declaration of the juror be made at the time, in which case it may be admissible as part of the *res gestæ.* Thus, in a case cited on this argument, a motion was made to set aside a verdict, on the ground that it had been entered by mistake; and affidavits were offered to prove declarations made by two of the jurors in a conversation on the same day, but after the delivery of the verdict. The affidavits were rejected, Lord Ellenborough saying, that it would not do, unless the conversation was at the time and *part of the transaction,* and while the jury were together. *Davis* v. *Taylor*, 2 *Chit.* 268. If in this case the conversation offered to be proved had been part of the transaction, and while the alleged payment was being made, it would have stood on a different footing, but it is the mere subsequent admission of the jurors. Though made during the recess of the court, yet having been made, as alleged, during the progress of the trial, and while the jury were still charged with their duty, this has been urged as distinguishing this case from those where the declarations were made after verdict. I am not inclined to make the distinction, but, if adopted, the affidavit would be inadmissible, being made by a juror, who was incompetent, by his oath, to inculpate his fellows. I think that so much of the deposition as relates to the declarations of the jurors must be rejected.

But, independent of these declarations of the jurors, and of their supposed admissions as to receiving pay from the plaintiff, I think the verdict must be set aside, simply on the ground of the misconduct of those jurors. I say nothing as to the plaintiff, or any attempt by him to influence the jury, though

the evidence is such as to create in my mind the strongest suspicion of his connivance, if not of his direct interference, in regard to the visit to the spring: the letter, written by a person whose relation to the plaintiff has already been stated, the plan of meeting, the evidently preconcerted attendance by the persons who met the jurors, one of them the brother of the plaintiff, the others his witnesses, and whose only object, so far as appears, was to converse with those jurors on the subject of the trial. But, laying aside any consideration as to the action of the plaintiff himself, these jurors, in the absence and without the knowledge of the defendants, by preconcerted arrangement, met the friends and witnesses of the plaintiff, and privately conferred with them in regard to matters which were considered to have an important bearing on the case. It was nothing less than an *ex parte* examination of evidence in the cause, the influence of which we cannot know, nor, indeed, ought we to inquire as to it. However inadvertent the conduct of the jurors may have been, who were perhaps drawn into it by the pretence that the evidence of the two witnesses, as to the spring, had been misrepresented, still it was a gross irregularity, which, if permitted, would destroy all confidence in the purity of jurors, and in the impartiality and fairness of their verdicts. Though verdicts should not be set aside on slight grounds not likely to be prejudicial to a party, yet certainly the welfare and security of the community require us to interfere in a case like this.

I am of the opinion that the rule should be made absolute, and the verdict set aside.

OGDEN, Justice, concurred.

New trial granted.

CITED *in Hutchinson* v. *Consumers' Coal Co.*, 7 *Vr.* 25.